### McCOY et al. v. PROVIDENCE JOURNAL CO. et al.
### No. 4533.

United States Court of Appeals,
First Circuit.
July 17, 1951.

Aram A. Arabian, Providence, R. I. (J. F. Murphy, Pawtucket, R. I., on the brief), for appellants.

William H. Edwards, Providence, R. I. (Gerald W. Harrington, Edward F. Hindle, and Edwards & Angell, Providence, R. I., on the brief), for appellees.

Before MAGRUDER, Chief Judge, WOODBURY, Circuit Judge, and SWEENEY, District Judge.

WOODBURY, Circuit Judge.

This is an appeal from a final judgment permanently enjoining the City Treasurer, who is also the Tax Collector, of Pawtucket, Rhode Island, "and all persons acting under or in concert with him," from withholding certain municipal tax abatement resolutions and lists from the plaintiffs, and from preventing them from inspecting those resolutions and lists "at all reasonable times during regular business hours."

The plaintiff, Providence Journal Company, is a Rhode Island corporation engaged in the business of publishing newspapers in the city of Providence which have a wide circulation throughout the state and a substantial circulation in the adjoining city of Pawtucket. The plaintiff, Sevellon Brown, is the editor and publisher of the Providence Journal Company, and as such is the chief executive officer of that corporation. The plaintiff, Joseph A. Kelly, is a reporter for the Providence Journal Company and the manager of its Pawtucket bureau. Both Brown and Kelly are citizens of the United States and of the state of Rhode Island, Brown being a resident of Providence, and Kelly a resident of Pawtucket, where he, and the Providence Journal Company as well, are also tax payers.

The defendant, McCoy, is the Mayor of Pawtucket; the defendant, McAloon, occupies the combined offices of City Treas-

urer and Collector of Taxes, and the other defendants are the City Clerk, the Assessors of Taxes, and various other executive and legislative officials of that city.

Stated in general terms the complaint alleges that the defendants, acting individually and in concert, have deprived the plaintiffs of rights guaranteed to them by the Federal Constitution in that they have prevented the plaintiffs from gaining access to certain fiscal records of the city of Pawtucket for the purpose of publication, while permitting others in like circumstances to have access to those records for the same purpose.

There is no serious dispute as to the basic facts as found by the court below.

On December 31, 1947, the City Council of the city of Pawtucket, which is a bicameral body consisting of the Board of Aldermen and the Common Council, met in special session and passed a joint resolution abating real and personal property taxes in the aggregate amount of $89,-377.12, as set forth in a list of tax abatements submitted by the Board of Assessors of Taxes which was affixed to and made a part of the resolution. Immediately upon adjournment of this meeting the plaintiff Kelly asked the defendant, Donovan, who was the City Clerk and as such the Clerk of the Board of Aldermen, for permission to see the resolution with its appendant list of abatements. Donovan told Kelly to see him "tomorrow." Repeatedly during the following weeks reporters for the Providence Journal Company, and other officers and agents of that corporation, made requests, at first orally and later in writing, of various Pawtucket officials for permission to see the list of tax abatements, but in every instance the request met with postponement, evasion or rebuff.

Affairs remaining in this state of deadlock, Mayor McCoy on Januaray 21, 1948, at a regular meeting of the Board of Aldermen, announced the release of the 1947 tax abatement list to the Pawtucket Times, a daily newspaper published in the city of Pawtucket which is a competitor in that city of the Providence Journal. And then at the same meeting the Board of

Aldermen passed an ordinance providing in pertinent part that "No city officer, official, agent or employee shall permit any person to examine any tax abatement record or any copy thereof, nor shall any such officer, official, agent or employee disclose the contents of any such record to any person, unless such person has permission of the City Council to examine such record." This ordinance was passed by the Common Council two days later and the Mayor immediately approved it.

None of the plaintiffs, and no one else on behalf of the Providence Journal Company, either then or subsequently, applied to the City Council for permission to see the tax abatement record pursuant to this ordinance. Instead on February 7, 1948, mandamus proceedings on the relation of the plaintiffs herein were instituted in the Superior Court of Rhode Island to compel Mayor McCoy, Treasurer and Tax Collector McAloon, and some of the other defendants, to make the tax abatement record available to the plaintiffs for publication. Thereupon Mayor McCoy immediately called a special session of the City Council for February 9, at which he read the following communication dated February 7, from himself to the Board of Aldermen:

"Gentlemen:

"It has come to my attention that certain attorneys and individuals engaged in the examination of titles find it necessary to examine tax abatement records of the City of Pawtucket. It is also obvious that any member of the public who has proper interest in such records should be permitted to see the same. Clearly, such persons should not be required to seek special permission each time the necessity for the examination of such records arises.

"In addition, it has come to my attention that The Pawtucket Times, a newspaper published in the City of Pawtucket, is desirous of examining these records for the purpose of publication in whole or in part as a public service.

"Accordingly, I have called your Honorable Body to meet in special session at this time (Monday, February 9, 1948 at five

o'clock P.M.) to act upon resolutions pertaining to these matters.

Respectfully,
Ambrose P. McCoy
Mayor."

Obviously in response to this letter, the City Council immediately passed two joint resolutions which were approved by the mayor on the same day. In one of these it was resolved first that permission be granted "to any person himself or through his agent, engaged in the examination of titles or work of similar nature, to examine tax abatement records pertaining to such titles; Permission is also granted to any person having an interest in such records which is such as would enable him to maintain or defend an action for which such records can furnish evidence or necessary information, whether such interest is private, capable of sustaining a suit or a defense in his own personal behalf; or capable of sustaining a suit or a defense as the representative of the common or public right;" and second it was further resolved, "that no person shall be permitted to examine such records for publication without the express permission of the city council." In the other it was resolved that permission be granted "to any duly authorized representative of The Pawtucket Times, a newspaper published in the City of Pawtucket, to examine and copy all tax abatement records for publication in whole or in part."

On these conceded facts no broad, general issue of freedom of the press is presented, for the defendants, acting in their respective official capacities, have not barred the press at large from access to the tax abatement records of the city of Pawtucket. They have given access to those records to the Pawtucket Times, but denied like access to its competitor the Providence Journal. To be sure, the denial is not direct and categorical, but it is none the less effective. Postponement, evasion and rebuff by the city officials are as effective as outright refusal, and application by the Providence Journal, or its officers or agents, to the City Council pursuant to local legislation for permission to see the records would clearly accomplish nothing, for the District Court found on such abundant evidence as to make challenge futile that the discrimination practiced by the defendants against the Providence Journal was "wilful," "purposeful," "arbitrary," and "capricious," and that the only reasonable conclusion to be drawn from the record as a whole was that the enactments of the City Council were but "the crowning achievement" of the discrimination which it had found to exist.

Thus the substance of the plaintiffs' case, omitting their contention with respect to freedom of the press which in our view it is not necessary to consider, is that they have the right under the law of Rhode Island to inspect and to publicize the fiscal records of the city of Pawtucket, and that the officials of that city, at first without statutory authority but later under color of city ordinances, have denied them that right while conferring it upon others whose circumstances were similar to their own.

We are confronted, therefore, with an issue of equal protection of the laws, and in keeping with accepted judicial practice we shall confine ourselves to that issue, passing the broader issue of freedom of the press, for in our opinion the case can be disposed of on the narrower issue.

This brings us to the question of jurisdiction.

In the complaint in the instant case, which was filed on August 19, 1948, federal jurisdiction of the controversy is alleged to rest upon § 24(1), (12), and (14), of the Judicial Code, as amended, 28 U.S.C. (1946 ed.) § 41(1), (12), and (14), now Title 28 U.S.C. §§ 1331, 1343. We think that federal jurisdiction of this controversy is conferred by § 1343, supra, and therefore see no occasion to inquire whether federal jurisdiction might also rest upon other statutory provisions.

By Title 28 U.S.C. § 1343(3), under the heading "Civil Rights", the district courts are given original jurisdiction without regard to the amount in controversy "of any civil action authorized by law to be commenced by any person: * * *.

"To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States." The Constitution directly limits the power of the states in § 1 of the Fourteenth Amendment wherein it is provided that "No State shall * * * deny to any person within its jurisdiction the equal protection of the laws." Also an Act of Congress, 8 U.S. C.A. § 43 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Thus under the Constitution of the United States all persons within the jurisdiction of a State are entitled as of right to the equal protection of its laws, Truax v. Raich, 1915, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131, and Congress has implemented that right, first by providing a cause of action for its enforcement, and second by giving the district courts original jurisdiction of that cause of action.

The question then is whether the plaintiffs are persons within the jurisdiction of the State who have been denied by the State the equal protection of its laws. Obviously the individual plaintiffs, and also the corporate plaintiff, are "persons" within the jurisdiction of the State of Rhode Island. Grosjean v. American Press Co., Inc., 1936, 297 U.S. 233, 244, 56 S.Ct. 444, 80 L.Ed. 660, and cases cited. And it is well settled that municipal ordinances and the actions in office of municipal officials constitute state action and are within the prohibition of the Fourteenth Amendment. Yick Wo v. Hopkins, 1886, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220;

Lovell v. Griffin, 1938, 303 U.S. 444, 450, 58 S.Ct. 666, 82 L.Ed. 949. The question remains whether under local law the plaintiffs have any right to inspect the municipal records here involved, for if they have no such legal right, but may have access to the records only as a matter of grace or favor, they have no standing here. They cannot be heard to complain of the denial by the state of the equal protection of its laws merely on a showing that another has been fortunate enough to be the recipient of a favor at the hands of municipal officials, or under a local ordinance, which they have been denied.

The District Court held, largely on the basis of the opinions of the State courts in the mandamus proceeding to which we referred earlier in this opinion, that the records here involved are public records, and that as such the plaintiffs have the legal right to inspect them. We agree.

In that mandamus proceeding the plaintiffs prevailed in the Superior Court. That Court in an unreported opinion dated May 14, 1948, stated that there were no controlling state statutes, but that under the Common Law as in force in Rhode Island the joint resolution of December 31, 1947, abating taxes constituted a "public record" of the city of Pawtucket, and that the plaintiffs had the right to inspect that record. It said that In re Caswell's Request, 1893, 18 R.I. 835, 29 A. 259, 27 L.R.A. 82, stated the "early common-law doctrine", and that the "modern American cases" reviewed in the "leading" case of Nowack v. Fuller, 1928, 243 Mich. 200, 219 N.W. 749, 60 A.L.R. 1351, which it quoted, established that there could be "no question 'as to the common-law right of the people at large to inspect public documents and records. The right is based on the interest which citizens necessarily have in the matter to which the records relate. So * * * a citizen and tax payer has a common-law right to inspect the public records * * * to determine if the public money is being properly expended. It is a right that belongs to his citizenship * * *.'" Wherefore the Superior Court concluded: "The authorities are clear that at Common Law the members of the public

in general have the right to inspect public records."

The Supreme Court of Rhode Island, however, in a decision not yet reported officially but to be found in Nolan v. Mc-Coy, 73 A.2d 693, 697, reversed. But it did so for procedural reasons on a motion to quash. It found that the writ was vague, argumentative, and prolix to an extreme degree, and thus lacking in that clarity and precision which is so essential in mandamus, that there was a gross misjoinder of parties plaintiff in that the Attorney General could not be joined with private persons in a suit brought to vindicate a private right, and that the mandate was defective in that it was directed to the defendants severally whereas their duty in the premises was alleged to be joint.

Thus the Supreme Court of Rhode Island did not reach the merits. Yet it did not ignore the merits altogether. It took occasion to say: "However, it may not be amiss to say here, in view of the protracted course of this litigation, that this court recognizes the common-law right of inspection of public records by a proper person or his agent provided he has an interest therein which is such as would enable him to maintain or defend an action for which the document or record sought can furnish evidence or necessary information. This court in Re Caswell's Request, 18 R.I. 835, 29 A. 259, 27 L.R.A. 82, while recognizing the common-law right of inspection of public records nevertheless directed its clerk to deny a newspaper a copy of a certain judicial record. Whether or not the right extends further than we have just stated we think is a question upon which we need not express an opinion here."

Judicial records, such as the court was considering in In re Caswell's Request referred to above, stand on a different basis from the fiscal records of a municipal corporation. Traditionally, courts have exercised the power to impound their records when circumstances warranted such action, but we are not aware of any comparable power of municipal officials with respect to the fiscal records of their municipality. Indeed the existence of such a power would be quite at variance with democratic principles as developed in this country. Thus we take the restrictive language used in In re Caswell's Request as intended to have application to judicial records, but not by any means as necessarily intended also to apply to the fiscal records of a municipality. This appears to be the construction put upon that language by the State Superior Court in the mandamus proceeding, and we see nothing in the opinion of the Supreme Court of Rhode Island in that proceeding to refute that construction.

At any rate, the decision of the Superior Court standing unreversed as to its exposition of the present local law constitutes for us the law of Rhode Island in the premises under the principle of Fidelity Union Trust Co. v. Field, 1940, 311 U.S. 169, 177, 178, 61 S.Ct. 176, 178, 85 L.Ed. 109, wherein, with citation of authorities, it is said: "The highest state court is the final authority on state law, but it is still the duty of the federal courts, where the state law supplies the rule of decision, to ascertain and apply that law even though it has not been expounded by the highest court of the State. * * * An intermediate state court in declaring and applying the state law is acting as an organ of the State and its determination, in the absence of more convincing evidence of what the state law is, should be followed by a federal court in deciding a state question." See also West v. American T. & T. Co., 1940, 311 U.S. 223, 236, 337, 61 S.Ct. 179, 183, 85 L.Ed. 139, in which it is stated that "a federal court is not free to reject the state rule merely because it has not received the sanction of the highest state court, even though it thinks the rule is unsound in principle or that another is preferable." Thus we would have to take the Superior Court's exposition of the local law even though (as is not the case), from the viewpoint of general law we might not agree.

Hence for present purposes it is established that the records with which we are concerned are "public records", and as such the individual plaintiffs, if not as members of the general public at least as citizens of Rhode Island, and the cor-

porate plaintiff as a local tax payer, are entitled under state law to inspect those records.[1] And clearly the refusal of the defendants to accord the plaintiffs their right of inspection while granting such right to a competitor, the Pawtucket Times, constitutes a denial of equal protection of the laws which gives rise to a case or controversy within federal jurisdiction under the statutes quoted earlier in this opinion.

 What has been said in the course of considering the question of jurisdiction, goes far to dispose of this appeal on the merits. The findings of the District Court to the effect that the plaintiffs were in fact grossly discriminated against by the defendants are amply supported by the evidence.

One further point, however, merits discussion.

The defendants seasonably moved pursuant to Rule 15 Fed. Rule Civ.Proc. 28 U.S.C.A. that the complaint be stricken for the reason that it did not comply with the requirements of Rule 8(a) and (e) id. Determination of this motion, and also motions to dismiss for lack of jurisdiction and to "drop improper parties", was deferred by the court below until the trial, when, by entering a judgment for the plaintiffs, it inferentially denied all motions.

 The complaint certainly is argumentative, prolix, redundant and verbose, and attached to it, labeled exhibits, are lengthy letters and affidavits containing evidentiary matter, including purported statements made by some of the defendants, and in the letters even legal arguments supported by citation of cases. It is hard to imagine a pleading more completely at variance with both the letter and the spirit of Rule 8(e)(1) which requires that each averment of a pleading be "simple, concise and direct." We think the defendants' motion to strike should have been granted promptly, whereby the issues might have been clarified for the benefit of all concerned. However, we cannot say that the complaint is so badly drawn that the defendants, although no doubt handicapped, were prevented from making their defense, or that either we or the court below, although also seriously handicapped, have been wholly prevented from ferreting out the issues lurking in the verbiage. Therefore, at this late stage of the proceeding, we treat the error as harmless in conformity with the mandate of Rule 61, F.R.C.P. wherein it is provided: "The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

Other points made by the appellants have been considered, but in so far as they are not covered in what has been said are passed as not of sufficient moment to merit discussion.

The judgment of the District Court is affirmed.

---

1. It is not disputed that if the plaintiffs have the right of inspection they also have the right of publication.