Richard **BORRECA** and Gannett Pacific Corporation, d/b/a "Honolulu Star-Bulletin", Plaintiffs,

v.

Frank F. **FASI** and James Lee Loomis, Defendants.

Civ. No. 73–4004.

United States District Court,
D. Hawaii.

Jan. 21, 1974.

David J. Dezzani, Goodsill, Anderson & Quinn, Honolulu, Hawaii, for plaintiffs.

T. Patrick Monaghan, Deputy Corp. Counsel, Richard K. Sharpless, Corp. Counsel, Honolulu, Hawaii, for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON PRELIMINARY INJUNCTION

SAMUEL P. KING, District Judge.

### Statement of the Case

On December 21, 1973, city hall news reporter Richard Borreca and his employer Gannett Pacific Corporation, doing business as Honolulu Star-Bulletin, filed an action in this court pursuant to 42 U.S.C. §§ 1983 and 1985, as authorized by 28 U.S.C. § 1343, requesting an injunction and damages against Frank F. Fasi, Mayor of the City and County of Honolulu, and James Lee Loomis, Administrative Assistant to the Mayor and Director Information and Complaint Office, for alleged actions of defendants denying Borreca access to city hall news.

A motion for a preliminary injunction was heard on January 4, 1974, and granted in part on January 7, 1974. The following constitutes the findings of fact and conclusions of law required by Rule 52, FRCP, in connection with the granting of a preliminary injunction.

### Findings of Fact

The Honolulu Star-Bulletin is Hawaii's leading newspaper of general circulation. Richard Borreca came to Hawaii in 1968, attended the University of Hawaii for two years, then started working for the Honolulu Star-Bulletin as a news reporter in 1970. For the past two years, his assignment has been Honolulu's city hall, which includes attending the mayor's news conferences. He is currently president of the City Hall Correspondents Association. His employer is satisfied with his professional qualifications.

During 1973, Mayor Fasi concluded that Borreca was irresponsible, inaccurate, biased, and malicious in reporting on the mayor and the city administration. This conclusion was based on the news stories written by Borreca, and was reinforced by a report that Borreca had said that the mayor was a "crook" and that Borreca was going to "shaft" the mayor at every opportunity. Mayor Fasi expressed his dislike for Borreca personally and stated that he would not talk to Borreca "until Hell freezes over." He declared Borreca persona non grata at city hall and instructed his staff, and specifically his administrative assistant James Lee Loomis, to keep Borreca out of the mayor's office.

Loomis, on behalf of the mayor and as part of his usual duties, announced general news conferences in the mayor's office for November 2 and 22 and December 13 and 19, 1973.

A general news conference was defined by Loomis as a conference "where all media generally are informed of the mayor's intention to hold a news conference and all are free to attend." Loomis testified as to notice of these conferences that: "Customarily I will have my people notify the two city desks of the two dailies [the afternoon Honolulu Star-Bulletin and the morning The Honolulu Advertiser], call the three television stations [KGMB–TV, KHON–TV, and KITV], one or two radio stations that we know directly would usually care, and we notify the two wire services [AP and UPI]. They in turn put out the word of the news conferences to their subscribers which would include anybody."

The usual format at these news conferences was that a prepared release would be handed out and explained to the attending representatives of the news media who would ask questions mostly confined to the subject matter of the release. There would be some TV camera coverage. The topics discussed related to the business of the City and County of Honolulu.

Borreca presented himself at the mayor's office on November 2, 1973, as the Honolulu Star-Bulletin's representative

at the news conference. Loomis informed Borreca that Borreca would not be allowed to attend the news conference. Borreca was in fact blocked and denied entry and no one from the Honolulu Star-Bulletin was in attendance at this conference.

Borreca again presented himself at the mayor's office on November 22, 1973, as the Honolulu Star-Bulletin's representative at that news conference. It is a fair inference from the evidence that Borreca expected to be excluded and purposely sought a confrontation with Loomis, which confrontation occurred and the verbal parts of which Borreca recorded on a portable tape recorder, transcribed, and wrote up for the next day's afternoon newspaper.

Borreca was in fact excluded from this news conference and the two December news conferences and no one from the Honolulu Star-Bulletin was in attendance at these conferences.

Mayor Fasi informed the Honolulu Star-Bulletin that any other reporter from that newspaper would be welcome, but the newspaper declined to change Borreca's assignment or to send another representative to the mayor's news conferences.

It is clear from the evidence that the mayor's objections to Borreca are based solely on what appeared in the Honolulu Star-Bulletin as Borreca's city hall news stories. No other ground for objection has been given, although Loomis mentioned "other acts" by Borreca. These "other acts" turned out to be Loomis' observation that Borreca seldom took notes thereby increasing the probability of inaccurate reporting, and the statements (mentioned above) attributed to Borreca indicating bias and malice against Mayor Fasi. For purposes of this motion for a preliminary injunction only and without prejudice to his right to contest the negative statements made about him by the mayor and Loomis, Borreca offers no rebuttal evidence regarding the accuracy of his reporting or his attitude toward the mayor.

## Issues Presented

Plaintiffs alleged that Mayor Fasi had instructed other city officials not to talk to Borreca, and requested an injunction against this alleged order. Prior to the January 4, 1974 hearing, Mayor Fasi issued Directive No. 99 dated January 2, 1974, making it clear that it was his personal policy not to deal with Borreca and that each city department head was free to exercise his own discretion in this regard. At the hearing, the parties agreed to continue the motion for an injunction in this regard indefinitely inasmuch as Directive No. 99 appears to have solved whatever problem was believed to have existed in seeking news from other city officials. It was understood that this matter could be moved on by any party at any time if further proceedings were deemed necessary.

Now before the court for decision is that portion of plaintiffs' motion for preliminary injunction relating to Borreca's attendance at the mayor's "press conferences".

Defendants contest the court's jurisdiction, the sufficiency of the complaint to state or of the evidence to support a cause of action, and the appropriateness of a preliminary injunction.

## Jurisdiction

If the complaint states a cause of action under 42 U.S.C. § 1983, then this court has jurisdiction under 28 U.S.C. § 1343.

## Sufficiency of the Complaint and Evidence

■ Freedom of the press as guaranteed by the First Amendment is safeguarded by the due process clause of the Fourteenth Amendment against invasions by state action. Near v. Minnesota, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931); Gitlow v. New York, 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138 (1925) (dictum).

■ First Amendment freedom of the press includes a limited right of reasonable access to news. Lewis v. Bax-

ley, 368 F.Supp. 768 (M.D.Ala.1973) (three-judge court); Consumers Union of United States, Inc. v. Periodical Correspondents Assn., 365 F.Supp. 18 (D. D.C.1973).

This right of access includes a right of access to the public galleries, the press rooms, and the press conferences dealing with government. Lewis v. Baxley, *supra.*

■ The limitations that may be placed by state action on this right of access are determined by a balancing process in which the importance of the news gathering activity and the degree and type of the restraint sought to be imposed are balanced against the state interest to be served. Where First Amendment rights are involved, the asserted state interest must be compelling and the proposed state action must be the least restrictive means available for the asserted governmental end. Lewis v. Baxley, *supra.*

The foregoing seems obvious and elementary in the light of our political and juridical history.

"In determining the extent of the constitutional protection [freedom of the press], it has been generally, if not universally, considered that it is the chief purpose of the guaranty to prevent previous restraints upon publication." Near v. Minnesota, *supra,* 283 U.S. at page 713, 51 S.Ct. at page 630.

"The importance of this immunity has not lessened. While reckless assaults upon public men, and efforts to bring obloquy upon those who are endeavoring faithfully to discharge official duties, exert a baleful influence and deserve the severest condemnation in public opinion, it cannot be said that this abuse is greater, and it is believed to be less, than that which characterized the period in which our institutions took shape. Meanwhile, the administration of government has become more complex, the opportunities for malfeasance and corruption have multiplied, crime has grown to most serious proportions, and the danger of its protection by unfaithful officials and of the impairment of the fundamental security of life and property by criminal alliances and official neglect, emphasizes the primary need of a vigilant and courageous press, especially in great cities. The fact that the liberty of the press may be abused by miscreant purveyors of scandal does not make any the less necessary the immunity of the press from previous restraint in dealing with official misconduct. Subsequent punishment for such abuses as may exist is the appropriate remedy, consistent with constitutional privilege." Near v. Minnesota, *supra,* at page 719, 51 S. Ct. at page 632.

Mayor Fasi argues that his ostracism of Borreca and ultimatum to the Honolulu Star-Bulletin are not invasions of freedom of the press or do not involve state action.

With respect to the first point, the mayor argues that nothing he has done "subjects, or causes to be subjected . . . [Borreca or the Honolulu Star-Bulletin] . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States, because the Honolulu Star-Bulletin is not prevented from having a representative at a news conference as anyone other than Borreca would be admitted, Borreca is not denied access to news as he may obtain a copy of each news release and of any other written material, and the right of access to news does not include a requirement that Mayor Fasi respond to Borreca's questioning.

One would have to be naive to believe that an individual reporter is solely responsible for the manner in which that reporter's news stories appear in print. Thus Mayor Fasi's objections to Borreca's performance as a reporter can equally be taken as objections to the Honolulu Star-Bulletin's approach to city hall news. Requiring a newspaper's reporter to pass a subjective compatibility-accuracy test as a condition precedent

to the right of that reporter to gather news is no different in kind from requiring a newspaper to submit its proposed news stories for editing as a condition precedent to the right of that newspaper to have a reporter cover the news. Each is a form of censorship.

News conferences are not held solely or even primarily for the benefit of the news media. Structured news conferences on limited topics covered by predistributed news releases serve the purpose of the person holding the conference as much if not more than of the news media. Manipulation of the news is a highly developed technique, utilizing staff news specialists, self-serving handouts, programmed appearances, and positive and negative reinforcement in dealing with reporters and news media. Hand-picking those in attendance intensifies the manipulation. In some respects, therefore, these events are less newsworthy than a freer give and take between interviewers and interviewee. To say, however, that attendance at such a news conference is not a legitimate news gathering activity is absurd.

■ As a general proposition, the mayor is quite correct in his position that he is not required to respond in any way to any question put to him by any representative of any news media. Whether repeated selective discriminatory unreasonable refusal to respond to all questions by an individual reporter would form the basis of an action for damages under 42 U.S.C. § 1983 is not before the court at this time. Certainly no mandatory injunction requiring the mayor to answer questions would be granted, if for no other reason than its unenforceability.

With respect to the mayor's second point, he argues that his news conferences are private affairs held in his private office at his discretion and his actions in connection with such conferences are not "under color of any statute, ordinance, regulation, custom, or usage," of the State of Hawaii.

■ The mayor is too modest. As the chief executive of the City and County of Honolulu, his statements on municipal and county operations and concerns are embryonic executive directives. They are public communications put forth by him in his official capacity. If he chooses to hold a general news conference in his inner office, for that purpose and to that extent his inner office becomes a public gathering place. When he uses public buildings and public employees to call and hold general news conferences on public matters he is operating in the public and not the private sector of his activities. His oral order to his staff to exclude Borreca from his office is an executive directive by him in the exercise of his authority as mayor which authority he derives from the constitution and laws of the State of Hawaii. The actions of his staff members in excluding Borreca are actions by public employees in their official capacities taken pursuant to the mayor's directive. *See* Shelly v. Kraemer, 334 U.S. 1, 68 S. Ct. 836, 92 L.Ed. 1161 (1947); McCoy v. Providence Journal Co., 190 F.2d 760 (1st Cir. 1951).

■ A free press is not necessarily an angelic press. Newspapers take sides, especially in political contests. Newspaper reporters are not always accurate and objective. They are subject to criticism, and the right of a governmental official to criticize is within First Amendment guarantees.

■ But when criticism transforms into an attempt to use the powers of governmental office to intimidate or to discipline the press or one of its members because of what appears in print, a compelling governmental interest that cannot be served by less restrictive means must be shown for such use to meet Constitutional standards. No compelling governmental interest has been shown or even claimed here.

The mayor suggests that there is no requirement that he hold any news conferences, and that he may select individual representatives of the news media

with whom to meet in situations other than general news conferences. The mayor is no doubt right again, as a general proposition. On the other hand, it is not necessary to the decision of the pending aspect of the motion for a preliminary injunction to discuss, and I therefore express no opinion, on the possible application to these situations of the equal protection clause of the Fourteenth Amendment, or of the possible implications of de facto discrimination against individual news gatherers or against selected segments of the news media.

### The Appropriateness of a Preliminary Injunction

Injunctive relief is authorized by 42 U.S.C. § 1983. Burnside v. Byars, 363 F.2d 744 (5th Cir. 1966).

A corporation is a "person" within the meaning of the due process clause of the Fourteenth Amendment and, for due process and equal protection deprivations, within the meaning of 42 U.S.C. § 1983. Grosjean v. American Press Co., 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660 (1936); Liggett Co. v. Lee, 288 U.S. 517, 53 S.Ct. 481, 77 L.Ed. 929 (1933); McCoy v. Providence Journal Co., 190 F.2d 760 (1st Cir. 1951).

Plaintiffs have demonstrated a probability of success on the merits of their action insofar as Mayor Fasi is concerned. With respect to Defendant James Lee Loomis, the evidence adduced so far shows that he acted pursuant to the mayor's instructions, so that injunctive relief against him is unnecessary as he would be covered by the general injunctive language including Defendant Fasi and anyone acting on his behalf or pursuant to his directions.

Where deprivations of First Amendment freedoms are involved, irreparable injury is presumed. A Quaker Action Group v. Hickel, 137 U.S.App. D.C. 176, 421 F.2d 1111 (1969) (semble). In any event, I find that exclusion of Borreca from the mayor's general news conferences at this time, when the legislature will be in session beginning January 16, 1974, and during the early months of an election year, will result in irreparable injury to Borreca and to his newspaper which injury cannot be adequately compensated by money damages.

No substantial harm will result to Defendant Fasi from the granting of the injunctive relief now requested.

At the hearing on this motion, a distinction was made between a "press conference" and a "news conference", the latter term being preferred by radio and TV news media representatives. Without engaging in any attempted semantic niceties at this time, I have granted the preliminary injunction in the exact words requested by plaintiffs.

### Conclusions of Law

Plaintiffs are entitled to a preliminary injunction enjoining Defendant Frank F. Fasi from preventing, or from instructing or advising any person to prevent, Plaintiff Richard Borreca from attending any press conference on the same basis and to the same extent that other news reporters attend press conferences.