**WESTINGHOUSE BROADCASTING CO., INC., Plaintiff,**

v.

**Michael S. DUKAKIS, et al., Defendants.**

**Civ. A. No. 76–930–S.**

United States District Court, D. Massachusetts.

March 12, 1976.

See also, D.C., 412 F.Supp. 580.

Charles R. Parrott, Robert J. Glass, Daniel J. Gleason, Nutter, McClennen & Fish, Boston, Mass., for plaintiff.

Mack K. Greenberg, Kenneth J. Mickiewicz, Boston, Mass., for DiCara, O'Neill, Hicks, Kerrigan, Ianella, Connelly, Langone & McDonough.

Joseph G. Sandulli, Angoff, Goldman, Manning, Pyle & Wanger, Boston, Mass., for IBEW Local 1228.

Terence P. O'Malley, Asst. Atty. Gen., Boston, Mass., for Dukakis, Harrington, McGee, Piro & Schlosstein.

Joseph Tierney, pro se.

## MEMORANDUM AND ORDER

SKINNER, District Judge.

The plaintiff is an Indiana corporation which owns and operates WBZ–TV Channel 4 and radio station WBZ in Boston (hereinafter collectively referred to as WBZ). WBZ is currently engaged in a labor dispute, in consequence of which so many of its employees as are members of the International Brotherhood of Electrical Workers (IBEW) have been ordered off the job by WBZ and their work is being performed by non-union management personnel. Among other jobs, such non-union personnel are acting as TV news cameramen.

The Complaint alleges that named public officials, at the request of IBEW, have barred WBZ cameramen from various public meetings and press conferences in violation of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. The plaintiff seeks injunctive relief and damages under 42 U.S.C. §§ 1983 and 1985(3). It has filed a motion for a temporary restraining order against all the defendants except IBEW.

The facts applicable to the several groups of defendants vary substantially, and they must be considered separately. The governing principles of law are the same for all, however, and provide the standard against which the various factual allegations are to be tested.

■ 1. The standard for granting a temporary restraining order is provided by Fed.R.Civ.P. 65, which requires that before I grant such relief I be satisfied that the plaintiff has a reasonable likelihood of success on the merits and that it will suffer irreparable harm if the temporary restraining order is not granted. Any significant denigration of First Amendment rights constitutes irreparable harm. *Borreca v. Fasi*, 369 F.Supp. 906 (D.Hawaii 1974).

■ 2. In actions under 42 U.S.C. §§ 1983 and 1985(3) there is no vicarious liability on the part of superior officials for the actions of their subordinates unless the superior actually directed or participated in the alleged violation of the plaintiff's constitutional rights.

■ 3. Public officials need not furnish information, other than public records, to any news agency. The opportunities to cover official news sources must be the same for all accredited news gatherers, however. All representatives of news organizations must not only be given equal access, but within reasonable limits, access with equal convenience to official news sources. This right is not absolute, but it may not be infringed upon by state officials in the absence of a compelling government interest to the contrary. *Quad-City Community News Service, Inc. v. Jebens*, 334 F.Supp. 8 (S.D.Iowa 1971); *Borreca v. Fasi*, 369 F.Supp. 906 (D.Hawaii 1974). The distinction between a news conference and a private interview is illuminated by the opinion in *Borreca v. Fasi, supra.*

■ The application of these principles to the defendants DiCara, O'Neill, Hicks, Kerrigan, Ianella, Connelly, Langone and Tierney is the least difficult because there is no dispute over the material facts. These eight defendants are the eight members of the Boston City Council. On March 8, 1976 they unanimously voted the following Order:

BE IT ORDERED under the provisions of Rule 33 of the City Council Rules and Regulations that any non-union employees from Channel 4–WBZ, or its affiliate WBZ Radio, be prohibited from the use of the City Council Chamber.

It appears from the statement of the defendant Tierney, who appeared pro se, that the Council has provided a specific section of the floor of the Chamber for the TV cameramen, which is provided with electrical outlets and other conveniences. Mr. Tierney in his statement said that he understood the prohibition against WBZ to apply only to this area, and that WBZ cameramen would be free to use the spectator's section.

There are two problems with Mr. Tierney's view: (1) The terms of the Order makes no such distinction; and, (2) even if it did, WBZ is entitled to share the special facilities provided for other stations, even though they are provided as a convenience. *Borreca v. Fasi, supra.*

Mr. Tierney concedes that the prohibition was imposed solely out of sympathy for the IBEW. This is not a compelling government interest, or even within the official purview of the City Council. There is no rational relationship to the orderly control of the Council's business which is concededly within its inherent legislative powers. Cf. *Consumers Union of United States, Inc. v. Periodical Correspondents' Association,* 169 U.S.App. D.C. 370, 515 F.2d 1341 (1975), *reversing,* 365 F.Supp. 18 (D.D.C.1973).

On March 8, according to his own affidavit, Mr. Joseph Brogna, Staff Director to the Boston City Council, apparently pursuant to the above Order, asked two WBZ cameramen to leave the Council Chamber, but permitted WBZ's reporter to remain.

The Order, and Mr. Brogna's actions thereunder, are in clear violation of the principles of law discussed above and constitute an interference with the plaintiff's rights under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. I am satisfied that the plaintiff is likely to prevail on the merits against the eight city councillors and that it will suffer irreparable injury if a restraining order is not entered. Accordingly, the plaintiff's motion for a temporary restraining order is ALLOWED as to the defendants DiCara,

O'Neill, Hicks, Kerrigan, Iannella, Connelly, Langone, McDonough and Tierney.

The same rules of law are applicable to the group of legislators named as defendants: i. e., Senate President Harrington, Speaker of the House McGee, and Co-chairmen Piro and Schlosstein of the Joint Committee on Taxation, all members of the Massachusetts General Court. In the Complaint the plaintiff alleges that these defendants barred its cameraman from an open meeting of the Joint Committee on Taxation. Neither by affidavit or otherwise, however, has the plaintiff offered evidence in support of this allegation. The only information supporting this allegation is contained in the following excerpt from the affidavit of Richard P. Flavin, a WBZ reporter.

"When I arrived at the State House prior to the meeting, I had a conversation with a representative of the House Speaker's office who informed me, that because of the labor dispute between WBZ and the union known as the International Brotherhood of Electrical Workers ('IBEW'), there was likely to be problems with WBZ's attempts to film portions of the committee hearing. In order to avoid a confrontation, WBZ did not send a cameraman to that hearing, and was thus unable to get news films for presentation on its various television news casts."

It is not clear if the predicted "problems" included denial of access to the meeting. More importantly, there is no evidence that the named defendants did anything at all. Piro and Schlosstein by affidavit specifically deny any knowledge of the reported conversation or of any attempt to deny WBZ access to their meeting.

There is clearly no basis for the entry of a temporary restraining order against these defendants, and accordingly the motion is DENIED as to them.

The plaintiff alleges further that Governor Dukakis barred a WBZ cameraman from his March 8 press conference. This allegation is supported by the affidavit

of Richard P. Flavin, which recites that Ms. Mary Fifield, the Governor's press secretary, told him that the WBZ cameraman would not be permitted to enter the conference room. Mr. Flavin's account, if true, warrants an inference that Ms. Fifield was acting with the Governor's specific authority. Ms. Fifield replies by way of affidavit that she merely told Flavin that she did not think it would be appropriate for WBZ personnel to cover the press conference given the Governor's hostility to scab labor, and that Flavin acceded to her request not to attend. At the Governor's March 9 press conference, it appears to be conceded that WBZ personnel were told that they were not welcome at the conference, but that no attempt would be made to exclude them physically. The WBZ reporter and cameraman did in fact attend the press conference, at which the Governor said the following:

> "I have requested the Channel 4 crew not to be present at these sessions for obvious reasons. I personally feel very strongly about this kind of thing. I happen to be [a] member of ASTRA * myself, but beyond that it seems to me that under the circumstances my own request that Channel 4 crew not attend should have been honored. However I cannot in all honesty and in good conscience invoke the police powers of the Capitol Police to prevent it. So that under the circumstances, all I can do is to make that request and hope that it would be honored."

At the hearing before me on March 10, 1976, the plaintiff submitted an additional affidavit concerning a subsequent event on March 9, 1976 which was not referred to in the Complaint. Counsel for Governor Dukakis had not been informed of this affidavit prior to the hearing and was not prepared to respond to the factual allegations. In summary, the affidavit states that a non-union WBZ cameraman had been assigned to cover a meeting at Boston University which the Governor was expected to attend. Because of the presence of the WBZ cameraman, the meeting place was picketed by members of the IBEW. The Governor advised the chairman of the meeting that he would not cross the picket line and would not attend the meeting until the picketing ceased. The pickets would not leave until the WBZ cameraman left. The WBZ representatives left the hall in order not to prevent the appearance of the Governor, but continued to film the outside of the hall. The chairman of the meeting then personally commandeered the WBZ news vehicle and drove it down the street. The pickets dispersed. The Governor arrived and is alleged to have made a public statement apparently endorsing the action of the meeting chairman in moving WBZ's vehicle.

The plaintiff's factual allegations concerning the Governor are complex and in part disputed. It argues that the Governor's actions are inappropriate, ill-advised and unfair, and constitute an unwarranted incursion into a labor dispute, the resolution of which has been preempted by Congress through the National Labor Relations Act.

The question of whether the Governor's actions are in conflict with the NLRA is not properly before me in this proceeding under the Civil Rights Act.

The propriety of the Governor's acts and words is no business of this Court unless and until it is established that some constitutionally protected right of the plaintiff has been violated. Even then, the matter may be resolved only by a careful balancing of conflicting rights. The Governor as well as the plaintiff has a constitutional right of free speech and the right to attend or not to attend such meetings as he chooses. On the other hand, his rights are not absolute any more than are the plaintiff's. The public words and deeds of a public official such as a Governor must be considered in the context of the power which he commands. It is not necessary that interference with constitutionally protected

* [A labor union].

rights reaches the level of physical force before the aid of this Court may be invoked.

It is obvious that such involuted and constitutionally delicate issues should not be resolved in a summary proceeding on contested affidavits. At the very least, the parties, and the Court itself, are entitled to a full evidentiary hearing with an opportunity for appropriate discovery and the examination and cross-examination of witnesses.

The requirements of Fed.R.Civ.P. 65 have not been met. Accordingly, the motion for a temporary restraining order against Governor Dukakis is DENIED.

The denial of part of its motion for a temporary restraining order does not, of course, preclude the plaintiff from presenting further evidence on these same issues at a more advanced stage of the proceedings.