Timothy SULLIVAN Plaintiff,

v.

CITY OF AUGUSTA, Defendant.

No. CIV.04–032–B–W.

United States District Court,
D. Maine.

March 19, 2004.

Lynne A. Williams, Law Office of Lynne A. Williams, Glen Cove, ME, Zachary L. Heiden, Maine Civil Liberties Union, Portland, ME, for Timothy Sullivan, Plaintiff.

Michael Kaplan, Preti, Flaherty, Beliveau, Pachios & Haley, LLC, Sigmund D. Schutz, Preti, Flaherty, Beliveau, Pachios & Haley, LLC, Portland, ME, for City of Augusta, Defendant.

### ORDER REGARDING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

WOODCOCK, District Judge.

True to its name, the March for Truth Coalition (Coalition) intends to march. Organized in January 2004, the Coalition has planned a demonstration in Augusta, Maine on Saturday, March 20, 2004, to advocate "worldwide end of war and empire-building, greater honesty and openness in domestic government, affordable health care, veterans' rights and benefits, and living wage jobs." The Coalition intends start its demonstration at the Maine State Capitol building, march through the Augusta city streets, and end with a rally back at the Capitol. To march on city streets, however, the Coalition needs and has applied for a parade permit from the City of Augusta (City). The City is willing to issue a permit but has conditioned its issuance on the Coalition's payment of traffic control and cleanup costs and the furnishing of a bond or other surety for potential damage. Claiming the City's conditions constitute an unconstitutional burden on its exercise of First Amendment rights, Timothy Sullivan (Sullivan), a Coalition organizer, has filed suit against the City, seeking a temporary restraining order enjoining the City against imposing these conditions. This Court concludes the City's bond requirement delegates excessive discretion to the Augusta Chief of its Police Department (Police Chief)and,

therefore, GRANTS the Motion for Temporary Restraining Order on the bond requirement. For all other purposes, however, this Court concludes the Augusta parade ordinance passes constitutional muster and therefore, DENIES the Coalition's motion in all other respects.

### I. Factual Background

### A. The Ordinance.

The City of Augusta regulates parades, marches, or other similar uses of public ways by requiring organizers to secure a municipal permit. Augusta, Me. Rev.Code Ord. ch. 13 § 5(a) [hereinafter § 13–5]. The application must be filed at least thirty days before the event and must include the name, address, and phone number of the person seeking the permit, the date and time for the parade, and its intended route. § 13–5(b). The permit costs $100 payable at the time the application is submitted. § 13–5(e).

Once the application is filed, the ordinance requires the applicant to meet with the Police Chief within ten days "to agree on the details of the route and other logistics." § 13–5(c). The Police Chief may deny the permit, alter its route for "traffic or safety reasons," or impose "reasonable conditions, including ... time limits, requirement to keep moving and on route, no amplification or sound truck, no explosives, fireworks or other artificial noise." § 13–5(d). The Police Department calculates the costs of traffic control and cleanup. § 13–5(e). Finally, the Police Chief *may* also require, prior to the issuance of the permit, that the applicant furnish a bond or a surety company in an amount up to $10,000.00 to "guarantee cleanup ... compliance with any applicable state and local law or regulation, and payment ... of all

proper claims against the applicant for damage to real or personal property ... arising out of acts done or omitted to be done by the applicant, his agents or employees." § 13–5(f).[1] Once the Police Department makes these determinations, it informs the applicant. Any additional costs must be paid and evidence of bond or insurance must be presented before the permit is issued. § 13–5(e), (f). An applicant who has been denied a permit or whose permit has been modified may appeal to the city council within five days of the denial or modification. § 13–5(g).

### B. The Application.

On February 9, 2004, on behalf of the Coalition, Sullivan formally applied for an "Application for Parade Permit" with the City Police Department, proposing three parade routes. The permit stated that the parade would be held on Saturday March 20, 2004, between 12:30–2:00 p.m.

### C. The City's Approval With Conditions.

Of the three approved parade routes,[2] Augusta Deputy Police Chief Major Gregoire (Gregoire) determined the first approved route would require twelve officers and two police vehicles for traffic control, costing $2,077.44. Gregiore determined the second approved route would require ten officers and two police vehicles costing $1,761.20.[3] In later discussions, Gregoire approved a third route, costing $1,543.08. In calculating these costs, Gregoire consid-

ered only the following factors: "the number of officers needed given the parade route, the detail rate, and the estimated length of the parade." *Gregoire Affidavit* at 5. The Gregoire's concern is "traffic control and direction." *Id.* In fixing this fee, Gregoire did not consider the costs of ensuring the safety of the marchers or any counter-protests. If there is any such concern, these factors would have been considered separately and not assessed under the parade ordinance. *Id.* at 6.

Gregoire also determined the Coalition would be required to furnish a bond of surety in the amount of $10,000.00 or evidence of appropriate insurance. Sullivan estimated event insurance would cost approximately $450. Currently, the Coalition claims it has assets of only $1,365, held in trust by other non-profit organizations in Maine.

## II. Discussion

### A. The Legal Standard.

■ To prevail on his motion for a temporary restraining order (TRO), Sullivan must demonstrate he has a reasonable likelihood of success on the merits and will suffer irreparable harm if the TRO is not granted. Fed.R.Civ.P. 65; *Westinghouse Broadcasting Co., Inc. v. Dukakis*, 409 F.Supp. 895, 896 (D.Mass.1976). Where deprivation of a First Amendment right is involved, irreparable injury is presumed. *Westinghouse*, 409 F.Supp. at 896. (noting "any significant denigration of a First

---

**1.** The ordinance provides for three ways the applicant may comply with this requirement: (1) a bond of a surety company; (2) cash or negotiable securities in lieu of the bond; or (3) evidence of appropriate insurance. § 13–5(f).

**2.** Sullivan initially proposed three routes. The City Police Department denied the first proposed route citing public safety concerns over blocked access to the hospital near Me-

morial Bridge in the City. Proposed Routes Two and Three were approved. As noted, the applicant later proposed a fourth route, which the City approved with the same conditions, but at slightly less cost.

**3.** Note that neither city ordinance cited by the Verified Complaint applies to the State House.

Amendment right constitutes irreparable harm"); *Borreca v. Fasi*, 369 F.Supp. 906, 911 (D.Haw.1974) (citing *Quaker Action Group v. Hickel*, 421 F.2d 1111 (D.C.Cir. 1969)). Although Sullivan must demonstrate he has met his burden with respect to the request for preliminary injunctive relief, the burden of demonstrating the constitutionality of the ordinance lies with the City.

## B. Preliminary Matters.

As a preliminary matter, this Court must address standing and exhaustion of administrative remedies.

### 1. Standing[4]

▪ Article III of the Constitution limits the jurisdiction of federal courts to actual cases or controversies. *Becker v. Federal Election Comm'n*, 230 F.3d 381, 384 (1st Cir.2000). To establish standing, the plaintiff bears the burden of satisfying three prerequisites: (1) an injury-in-fact; (2) a causal connection between the injury and the conduct complained of; and (3) a "likelihood" the injury can be redressed by the court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119

L.Ed.2d 351 (1992); *Skrizowski v. United States*, 292 F.Supp.2d 277, 280 (D.N.H. 2003); *see also Sierra Club v. Morton*, 405 U.S. 727, 740, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1970) (rejecting the grounds of "public interest" for standing).

▪ The factual requirements to establish standing vary depending on the stage of proceedings. *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130. At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice. *Id.* Where prospective relief, such as a restraining order, is sought, the plaintiff need only allege facts that the injury is certainly impending, such as "a *sufficient* likelihood that he will again be wronged." *Skrizowski*, 292 F.Supp.2d at 280 (emphasis added); not an "injury-in-fact."

▪ With respect to § 13–5, Sullivan has established standing. As an organizer of the march and a participant, Sullivan has established that he will suffer an "injury in fact," since the conditions of the City's permit will affect him "in a personal and individual way." *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130. Further, he has demonstrated a clear causal connection between the injury and the ordinance. Fi-

---

**4.** It is difficult to discern in what capacity Sullivan stands before this Court. Sullivan is the named plaintiff in the Verified Complaint and he is self described as "an organizer of the March for Truth Coalition, an unincorporated association." Yet, as the City notes in its response, there is "no allegation that he has brought this action on behalf of the [Coalition] or with authorization from the [Coalition], or what his level of authority is, if any." (Docket No. 4, p. 4.). Sullivan's imprecise allegation is compounded by the parties' failure to agree on who the applicant is. There is no clear indication whether Sullivan filed the permit application in his individual capacity, as he suggested at oral argument, or in an agency capacity on behalf of the Coalition, as the City suggested. The City argues that because Sullivan applied for the permit as a representative of the Coalition, but then filed

his Verified Complaint in his individual capacity, he was not subject to denial of the permit and, therefore, has suffered no injury. Sullivan contends he filed the application as an individual and subsequently filed in his individual capacity as a plaintiff. Moreover, he contends he brings suit to challenge the constitutionality of the ordinance, not the denial of a parade permit. Despite the Court's urging, none of this was clarified at oral argument.

As a matter of policy, courts should construe pleadings liberally, giving weight to substance over form. *Rodriguez v. Doral Mortgage Corp.*, 57 F.3d 1168, 1171 (1st Cir.1995). Sullivan signed the permit application and has initiated the suit in his name only. Based on the allegations in the Complaint, this Court considers the Plaintiff to be Sullivan in his capacity as an individual.

nally, there is a likelihood this Court can redress the injury. *Lippoldt v. City of Wichita*, 265 F.Supp.2d 1228 (D.Kan.2003).

## 2. Administrative Remedies

■■■ Subsection (g) of § 13–5 states that if the permit is modified or denied, the applicant may appeal to the city council within five days. The doctrine of exhaustion provides that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Gonzalez v. Ritz Carlton Hotel Co. of Puerto Rico*, 241 F.Supp.2d 142, 144 (D.P.R.2003). The exhaustion doctrine, though mostly applied to state and federal legislation, is applicable to municipal ordinances. *See, e.g., Euge v. Trantina*, 298 F.Supp. 873 (D.C.Mo.1969). However, where the attack on the statute or regulation is purely constitutional, as it is here, the exhaustion of administrative remedies is not required. *See Weinberger v. Salfi*, 422 U.S. 749, 761–62, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). The Augusta City Council would not be in a position to rule on the constitutionality of its own ordinance. *Id.; see also Minster v. Town of Gray*, 584 A.2d 646, 648 (Me.1990) (citing *Weinberger* and finding that constitutionality of ordinance may not be "determined by the town agency that issues building permits"). Moreover, it is unclear whether the appeal provision is applicable, because there is no evidence the City denied or modified the permit as required by § 13–5(g). Sullivan challenges the constitutionality of the application of the ordinance, not the denial of a permit.

## C. Likelihood of Success of the Merits.

■■■ The First Amendment provides that "Congress shall make no law … abridging the freedom of speech, or of the press; or the right of people peaceable to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. Public speaking, parades, or assemblies fall within "the archetype of a traditional public forum." *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 130, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992) (quoting *Frisby v. Schultz*, 487 U.S. 474, 480, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988)); *Gregory v. Chicago*, 394 U.S. 111, 112, 89 S.Ct. 946, 22 L.Ed.2d 134 (1969); *Hurley v. Irish–American Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557, 568, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995); *see also Casey v. City of Newport*, 308 F.3d 106, 111 (1st Cir.2002). Requiring a permit and fee for such activity constitutes a prior restraint on speech. *Forsyth County*, 505 U.S. at 130, 112 S.Ct. 2395.

■■■ Despite the heavy presumption against the constitutional validity of a prior restraint on free speech, permit requirements applied to parades or other uses of public forums have been held to be valid, provided such schemes meet strict constitutional requirements. *Cox v. New Hampshire*, 312 U.S. 569, 574–6, 61 S.Ct. 762, 85 L.Ed. 1049 (1941). To withstand constitutional challenge, the permit requirements may not delegate overly broad licensing discretion to a government official. In the words of the *Forsyth County* Court, the decision how much to charge or even whether to charge at all cannot be left "to the whim of the administrator." *Forsyth County*, 505 U.S. at 133, 112 S.Ct. 2395. The standards for approval, denial or the imposition of conditions must be "narrowly drawn, reasonable, and definite." *Id.* at 133, 112 S.Ct. 2395; *Niemotko v. Maryland*, 340 U.S. 268, 282, 71 S.Ct. 328, 95 L.Ed. 280 (1951). The time, place, and manner of speech may not be based upon the content of the message; the scheme

must be narrowly tailored to serve a significant governmental interest; and "ample alternatives for communication" must be left open. *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 130, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992). Such content-neutral restrictions—often referred to as "time, place, manner" restrictions—must contain adequate standards to guide an agency's decision, and the decision which must be subject to effective judicial review. *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 324, 122 S.Ct. 775, 151 L.Ed.2d 783 (2002).

■ Sullivan challenges § 13–5 on its face as violative of his First Amendment right to free speech. This Court considers first the requirements of the application fee and costs of retaining law enforcement services. § 13–5(d), (e). In *Cox v. New Hampshire*, the United States Supreme Court held that fees related to "the expense incident to the administration of the [event] and to the maintenance of public order in the matter licensed" are not unconstitutional. *Cox*, 312 U.S. at 577, 61 S.Ct. 762. There is no evidence on the record the application fee is anything but administrative. The imposition of these costs is mandatory, not discretionary. § 13–5(e) ("The cost of the permit *shall* be $100, *plus* the costs of traffic control ... and cleanup costs.") (emphasis added). To the contrary, the record establishes that the police fee is simply a mathematical computation based on the Police Chief's assessment of the police presence necessitated by the parade route. Sullivan does not contend the City does not have an important interest in maintaining public order. Therefore, with respect to subsections (d) and (e) of § 13–5, the City has met its threshold burden: these portions of the ordinance are constitutional as applied.

The Court now turns to the constitutionality of the bond and/or event insurance requirement. § 13–5(f). In *Freedman v. Maryland*, the Supreme Court recognized the "peculiar dangers" imposed on otherwise constitutionally protected speech when a licensing body's prior approval of the content is contingent upon the issuance of the license. 380 U.S. 51, 57, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). The *Freedman* Court noted that a licensing board would likely overestimate perceived dangers of controversial speech. *Id.* at 52–53, n. 2, 85 S.Ct. 734. It is "the censor's business is to censor," the Court wrote. *Id.* at 57, 85 S.Ct. 734. The *Freedman* Court held that "(1) any restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained; (2) expeditious judicial review of that decision must be available; and (3) the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof once in court." *Thomas*, 534 U.S. 316, 321, 122 S.Ct. 775, 151 L.Ed.2d 783 (2002) (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 227, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990)).

More recently, in *Thomas v. Chicago Park District*, the Supreme Court expounded on the reach of *Freedman*'s procedural requirements to free speech: it held that *Freedman* did *not* apply to permit schemes which are both limited to public safety concerns and void *any* consideration of content of speech. 534 U.S. at 322, 122 S.Ct. 775 (noting Court has "never required that a content-neutral permit scheme regulating speech in a public forum adhere to the procedural requirements set forth in *Freedman*"). In so doing, the *Thomas* Court also reaffirmed the pertinence of the *Forsyth County* and its progeny, stating:

> even content-neutral time, place, and manner restrictions can be applied in such a manner as to stifle free expres-

sion. Where the licensing official enjoys unduly broad discretion in determining whether to grant or deny a permit, there is a risk that he will favor or disfavor speech based on its content.

*Thomas,* 534 U.S. at 324, 122 S.Ct. 775 (citing *Forsyth County,* 505 U.S. at 131, 112 S.Ct. 2395); *see also New England Reg'l Council of Carpenters v. Kinton,* 284 F.3d 9, 21 (1st Cir.2002).

 In the instant case, subsection (f) bestows on the Police Chief the authority to determine whether the applicant must post a surety bond at all and, if so, what the amount of the bond must be up to $10,000.00. The ordinance itself contains no standards whatsoever, much less "narrowly drawn, reasonable and definite" standards, under which the Police Chief is to make this determination. *Forsyth County,* 505 U.S. at 133, 112 S.Ct. 2395. The First Amendment "prohibits the vesting of such unbridled discretion in a government official." *Forsyth County,* 505 U.S. at 133, 112 S.Ct. 2395.

Nothing in subsection (f) or its application prevents the police chief from "encouraging some views and discouraging others through [its] arbitrary application...." *Id.* It is difficult for this Court to envision how the Augusta Police Chief will make the determination as to whether to require the bond or how much to require without making a subjective determination of the content of the applicant's speech, the estimate of the response of others, and the likelihood that the applicant's members will cause or fail to prevent damage to real or personal property. It is this range of considerations that implicates the protections of the First Amendment. *Forsyth County,* 505 U.S. at 134, 112 S.Ct. 2395. It is not enough for the City to assert that

the Police Chief has *not* exercised his discretion in a content-based fashion; the question is "whether there is anything in the ordinance preventing him from doing so." *Forsyth County,* 505 U.S. at 133, 112 S.Ct. 2395. Thus, the practical effect of this subsection is content-based discrimination. *See, e.g., Invisible Empire of the Knights of the Ku Klux Klan v. Town of Thurmont,* 700 F.Supp. 281 (D.Md.1988) (finding a requirement of insurance unconstitutional because it was based on assessment of content of speech). While the City's justification may be substantially related to important government interest, it does not substantiate, nor satisfy a content-based assessment.[5] *Id.* at 136, 112 S.Ct. 2395.

 The right to free speech is a fundamental right protected by the First Amendment. A government may not regulate speech based on its substantive content or the message it conveys. *Rosenberger v. Rector & Visitors of Univ. of Va.,* 515 U.S. 819, 828, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995). Such content-based regulations are subject to strict scrutiny and require the government to show that the challenged regulations are necessary to serve a compelling state interest and are narrowly drawn to achieve this end. *Arkansas Writers' Project, Inc. v. Ragland,* 481 U.S. 221, 231, 107 S.Ct. 1722, 95 L.Ed.2d 209 (1987). The City has failed to meet this burden. Because the bond and/or event insurance requirement requires to some degree that the police chief assess the content of the proposed event, and because the ordinance fails to articulate the standards by which such a determination of application may be made, subsection (f) is unconstitutional.

---

**5.** At oral argument, the City conceded that there is no evidence on the record regarding the procedure used by the police chief's application of subsection (f), unlike that used by the chief in determining costs for subsection (d).

356

## D. Severability.

 A portion of a statute, regulation, or ordinance which is found to be unconstitutional may be severed so that the remainder of the law may be left valid and enforceable. *Alaska Airlines, Inc. v. Brock,* 480 U.S. 678, 684, 107 S.Ct. 1476, 94 L.Ed.2d 661 (1987). In *Alaska Airlines,* the Supreme Court enunciated the well established standard for determining the severability of an unconstitutional provision: "Unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law." *Id.* at 684, 107 S.Ct. 1476 (citations omitted); *Gilbert v. State,* 505 A.2d 1326, 1329 (Me.1986) (discussing "longstanding common law rule of severability, which held that 'where an unconstitutional and invalid portion of a statute is separable from and independent of a part which is valid the former may be rejected and the later may stand' ") (citations omitted). Here, § 13–5 remains fully operative without subsection (f). The portions of the ordinance not classified as unconstitutional remain in effect.

## E. Irreparable Harm.

As the Plaintiff's claim involves the deprivation of his First Amendment rights, irreparable harm is presumed. *Westinghouse,* 409 F.Supp. at 896; *Borreca,* 369 F.Supp. at 911.

## III. Conclusion

This Court GRANTS in part the Plaintiff's Motion for a Temporary Restraining Order and the City is temporarily enjoined from enforcing subsection (f). The remaining portions of § 13–5 may be enforced.

SO ORDERED.