UNITED STATES of America

v.

John J. CONNOLLY, Jr.

No. CRIM.A.99–10428–JLT.

United States District Court,
D. Massachusetts.

May 8, 2002.

———— a ————

Cynthia M. Shepherd, John H. Durham, Leonard C. Boyle, U.S. Department of Justice, Justice Task Force, Boston, MA, for Plaintiff.

Tracy A. Miner, R. Robert Popeo, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., George w. Price, John J. Tangney, Jr., Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, Boston, MA, for Defendant.

*MEMORANDUM*

TAURO, District Judge.

This court has allowed the Boston Globe's *Motion of Shelley Murphy and Ralph Ranalli for Exemption From Sequestration Order* [# 523]. In doing so, the court adopts the rationale set forth in said Motion. (See Appendix)

Further, the court points out that there is abundant precedent for exclusion with respect to certain categories of witnesses, such as government case agents in criminal cases and expert witnesses in both civil and criminal cases.

Moreover, unlike agents and experts, the reporters at issue here are not adversarial witnesses. As well, allowance of this motion has the salutary effect of permitting them to meet their important First Amendment responsibility of keeping the public informed as to the events taking place in open court.

The court has also denied without prejudice the *Motion of Shelley Murphy and Ralph Ranalli to Quash Subpoenas or For a Protective Order.* The underlying issues may be raised again should the reporters be called as witnesses. The court is to be notified forty-eight hours in advance of such intended testimony, in order that the issues of whether the reporters must testify and, if so, what the scope of such testimony will be, may be decided in a timely fashion.

## APPENDIX

## MOTION OF SHELLEY MURPHY AND RALPH RANALLI FOR EXEMPTION FROM SEQUESTRATION ORDER

Boston Globe reporters Shelley Murphy and Ralph Ranalli respectfully move for an order exempting them from the provisions of the witness sequestration order in this

case. As grounds for their motion, movants state as follows:

1. Each of the moving parties plans to attend and report on the trial of this case.

2. Ms. Murphy has been reporting on organized crime in New England in general and on Whitey Bulger in particular since 1985. She brings considerable expertise and historical knowledge to the coverage of this case, attributes that are of a substantial benefit to the public, which has a compelling interest in the subject matter of this case.

3. Mr. Ranalli also has considerable experience in covering the subject matter of this case, first as a reporter for the Boston Herald and now as a reporter for the Globe. In addition to his reporting duties, Mr. Ranalli is the author of the book *Deadly Alliance* which concerns the relationship between the FBI, Whitey Bulger, and Steven Flemmi.

4. The government and the defendant have subpoenaed Ms. Murphy and Mr. Ranalli to testify at trial. It is the understanding of undersigned counsel that the government is seeking the reporters' testimony solely to confirm the accuracy of statements attributed to the defendant in certain Globe and Herald articles. Counsel for the moving parties also understands that the defendant is willing to consider entering into a stipulation with the government confirming that statements attributed to the defendant were in fact made by him. Such a stipulation might eliminate any asserted need for the reporters' testimony.

5. As the government and the defendant also are aware, the reporters intend to move to quash the subpoenas on the grounds that neither party can satisfy the constitutional burdens imposed on those who seek to compel the testimony of newspersons. *See generally United States v. LaRouche Campaign,* 841 F.2d 1176, 1182 (1988); *In re Cusumano,* 162 F.3d 708, 714 (1st Cir.1998).

6. In short, there is, at this juncture, no likelihood that the reporters' testimony ever will be required at trial. Moreover, even were the Court ultimately to rule that some limited testimony from either or both of the reporters was sufficiently relevant to an issue at trial and could not be obtained from alternate sources, the reporters still should be relieved of the sequestration order. Neither of the reporters was a party or witness to any criminal activity. Their qualifications as witnesses apparently arise from accurately reporting news to the public. Each has a special background and experience to which the public is entitled to enjoy the benefit of in reading about this trial. Enforcing the sequestration order with respect to these reporters therefore threatens the public's understanding of events occurring at trial and unnecessarily interferes with the free flow of information.

7. The combined effect of the subpoenas (the enforceability of which have not yet been ruled upon by the Court) and the sequestration order would violate the reporters' First Amendment rights if applied to them. There is no question that these reporters have a First Amendment right to attend the trial of this case. *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982). It also is beyond dispute that only in the most extraordinary circumstances is the government permitted, consistent with the First Amendment, to discriminate between members of the press in granting access to trials and other governmental proceedings. *See Anderson v. Cryovac,* 805 F.2d 1, 9 (1st Cir.1986) (a court "may not selectively exclude news media from access to information otherwise made available for public

inspection. Such a practice is unquestionably at odds with the First Amendment. Neither the court nor any branch of the government can be allowed to affect the content or tenor the news by choreographing which organizations have access to relevant information."); *McCoy v. Providence Journal Co.*, 190 F.2d 760, 766 (1st Cir.), *cert. denied,* 342 U.S. 894, 72 S.Ct. 200, 96 L.Ed. 669 (1951) (city could now allow one newspaper access to public records and not another); *Westinghouse Broadcasting Co. v. Dukakis,* 409 F.Supp. 895, 896 (D.Mass.1976) (selective exclusion of one television station from press conference violated the First Amendment). *See also Sherrill v. Knight,* 569 F.2d 124, 129–30 (D.C.Cir.1977) (generic "reasons of security" were constitutionally insufficient basis to selectively deny reporter's access to White House press facilities).

8. Exceptions to sequestration orders commonly are granted. For example, law enforcement agents who play an essential role in the prosecution but who also may end up testifying (just as the defendant himself may end up testifying) often are excused from sequestration orders. Given the uncertainty of whether Ms. Murphy or Mr. Ranalli ever will be called to testify, and in view of the exceedingly narrow scope of any relevant testimony they might offer, the public interest in these reporters being able to cover this proceeding far outweighs any conceivable interest in excluding them from the trial of this case. *See generally United States v. Sepulveda,* 15 F.3d 1161, 1176 (1st Cir.1993) (district courts have considerable discretion in fashioning sequestration orders).

Accordingly, movants respectfully request that the Court enter an order excusing Shelley Murphy and Ralph Ranalli from the provisions of the witness sequestration order.

By their Attorneys,

Jonathan M. Albano BBO #013850

BINGHAM DANA LLP

150 Federal Street

Boston, MA 02110

(617) 951-8000

Dated: May 7, 2002

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney(s) of record for each other party by fax on May 7, 2002.

Jonathan M. Albano